UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | : |                          |
| AHMED ABDEL-RAOUF, M.D.  | : |                          |
|                          | : |                          |
|                          | : |                          |
| v.                       | : | CIV. NO. 3:12CV776 (HBF) |
|                          | : |                          |
| YALE UNIVERSITY          | : |                          |
|                          | : |                          |

## RULING ON MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Yale University moves for judgment as a matter of law on all of plaintiff's claims, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  Defendant argues that plaintiff has not presented evidence to support his claims of discrimination and retaliation based on his race and/or religion pursuant to 42 U.S.C. Section 2000e et seq. and 42 U.S.C. Section 1981.

The parties commenced a jury trial on January 21, 2015. At the close of plaintiff's case on the eighth day of trial, February 3, 2015, defendant moved under Rule 50 for judgment as a matter of law.

For the reasons that follow, defendant's Motions for Judgment as a Matter of Law **[Doc. ## 126, 127]** are **GRANTED.**

I.   **RULE 50(A)**

The court "will grant a motion for judgment as a matter of law only if, viewing the evidence in the light most favorable to the non-moving party, a reasonable juror would be compelled to find in favor of the moving party." Drew v. Connolly, 536 F. App'x 164, 165 (2d Cir. 2013) (citation and internal quotation marks omitted); This is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (same standard applies to pretrial motion for summary judgment and motion for judgment as a matter of law during or after trial; evidence must be such that reasonable juror would have been compelled to accept movant's position). "When evaluating a motion under Rule 50, courts are required to 'consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in its favor from the evidence.'" ING Global v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97 (2d Cir. 2014) (quoting Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001)). "The Court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not

required to believe." Id. (citing Tolbert, 242 F.3d at 70 (internal quotation marks omitted)).

"Since grant of one of these motions deprives the party of a determination of the facts by a jury, they should be cautiously and sparingly granted." Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 59 (2d Cir. 1993) (quoting 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §2524, at 541-45 (1971) (citations omitted)).

## II.   RELEVANT FACTUAL BACKGROUND

Applying this standard, we must assume the truth of Dr. Abdel-Raouf's evidence and grant him every reasonable inference. This means that the jury could have found the following facts.

**Residency Agreements**

In July 2009, Yale University appointed plaintiff to serve as a resident physician in the second year of its four year psychiatric residency program ("PGY2") through June 30, 2010. [Pl. Ex. 30].

On July 1, 2010, plaintiff entered into a second residency agreement with Yale University as a PGY2 through September 30, 2010, "in accordance with the terms and conditions set forth in the letter from Dr. Rohrbaugh to the Resident dated May 28, 2010. [Pl. Ex. 31, Def. Ex. 503].

**Alleged Discriminatory Comments**

A shooting at Ft. Hood, Texas took place on November 5, 2009. Dr. Abdel-Raouf testified that Dr. Chiles said,

> "I need-I want to talk to you about your evaluation before your rotation ends." And she said, "I think you are not doing well. And we have to keep an eye on you. And evaluate you very carefully because did you see what happened with this Arabic Psychiatric soldier? They said if he was evaluated very carefully in residency training this killing and life loss will not happen."
>
> . . . .
>
> I was looking at her in disbelief. So she said, "I am going to give feedback about you to Dr. Rohrbach and Dr. Vojvoda." Which is the VA Site Director. So I respond to her, I said, "Ma'am, please don't hurt me, destroy my life. I didn't do anything." She responded, she says, "That's my obligation. I am going to use it to the maximum."

[Pl. Test. Jan. 21, 2015, 2:18PM].

### III. TITLE VII and SECTION 1981: Discrimination Claims

### 1. <u>McDonnell Douglas</u> Framework

Plaintiff alleges that Yale University denied him advancement to the third year of its four year psychiatric residency program ("PGY3")  and ultimately dismissed him from the residency program, on the basis of race and/or religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

4

§2000e; and 42 U.S.C. §1981. Allegations of employment discrimination under Section 1981 are analyzed under the same framework as Title VII claims. Choudary v. Polytechnic Inst., 735 F.2d 38, 44 (2d Cir. 1984) (Title VII analysis applies to Section 1981 claims); Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988) ("The elements required to make out a claim of retaliatory discharge under 42 U.S.C. §1981 are the same as those required to make out such a claim under Title VII."); see McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-08 (1993).

The initial burden lies with the plaintiff. To establish a prima facie case, the plaintiff must show that: (1) he belongs to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination based on a protected ground (here, race or religion). See McDonnell-Douglas Corp., 411 U.S. at 802.

Once the plaintiff has met this burden, a presumption of discrimination arises and the burden shifts to the employer to offer a legitimate and specific non-discriminatory reason for the discharge. Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). If the employer meets this burden, the presumption of discrimination drops out, Hicks, 509 U.S. at 510-11 , and the

burden shifts back to the plaintiff to fulfill the ultimate
burden of proving that the stated reason is false and that the
employer was actually motivated in whole or in part by prohibited
discrimination. "A proffered 'reason cannot be proved to be a
"pretext for discrimination" unless it is shown both that the
reason was false, and that discrimination was the real reason."
Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir.
1997) (quoting Hicks, 509 U.S. at 515 (emphasis in original)).

A prima facie case combined with a showing that an
employer's asserted justification is false is sometimes, but not
always, sufficient to permit a discrimination claim to survive
summary judgment. Schnabel v. Abramson, 232 F.3d 83, 89-91 (2d
Cir. 2000) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530
U.S. 133, 143 (2000)). The Court must "examin[e] the entire
record to determine whether the plaintiff could satisfy his
'ultimate burden of persuading the trier of fact that the
defendant intentionally discriminated against the plaintiff.'"
Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143).

The parties do not dispute that Dr. Abdel-Raouf, as a Muslim
of Arab descent, is a member of a protected group and that he
suffered an adverse employment action.  Yale, however, argues
that Dr. Abdel-Raouf cannot show that his performance was
satisfactory to move on to the third year of the residency
program or that his dismissal from the PGY2 occurred under

6

circumstances giving rise to an inference of discrimination and/or retaliation on the basis of race and/or religion.

Defendants argue in the alternative that, even assuming his prima facie case were established on this record, Dr. Abdel-Raouf cannot demonstrate with credible, admissible evidence that defendants' legitimate explanation for dismissing him due to sub-par performance is worthy of disbelief, or that the true motivation for its conduct was unlawful discrimination.

Viewing the evidence on the record as a whole and in the light most favorable to Dr. Abdel-Raouf, the Court finds that no rational factfinder could conclude that plaintiff was qualified for the position of third year residentor that defendants' proffered explanation was false or that his termination was motivated by racial or religious enmity.

**Deference to Academic Decision**

At the outset, the Court notes the unusual character of a residency training program. "A medical residency is a hybrid position in which the resident is both a student and employee. However, it is primarily a learning position . . . ." Fenje v. Feld, 301 F. Supp. 2d 781, 801 (N.D. Ill. 2003) (citing cases). Where an employment relationship is primarily educational, courts from the Supreme Court, various Courts of Appeal, state courts and trial courts have recognized that judges and juries are

singularly unequipped to review judgments about professional qualification. See Board of Curators v. Horowitz, 435 U.S. at 78, 90 (1977) ("Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking."); Shaboon v. Duncan, 252 F.3d 772, 731 (5th Cir. 2001) ("dismissal was academic if it 'rested on the academic judgment of school officials that [he] did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal.'") (quoting Horowitz, 435 U.S. at 90)); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir. 1995) ("[d]eterminations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professional, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges."); Nigro v. Virginia Com. University Medical College of Virginia, Civil Action No. 5:09-CV-00064, 2010 WL 4879076, *10 (W.D. Vir. Nov. 23, 2010) ("While a plaintiff is entitled to establish by showing disparate treatment that illegal

discriminatory animus was the basis for an adverse action, administrators of professional schools are entitled to deference in their decisions to admit, retain, or dismiss a student when such evidence is lacking.") (quoting Herron v. Virginia Commonwealth University, 366 F. Supp. 2d 355, 364, n.16 (E.D. Vir. 2004))); Fenje , 301 F. Supp. 2d at 801-02 ("Academic grounds for dismissal from a residency program include reasons that go to the resident's fitness to perform as a doctor."); see also Gupta v. New Britain General Hospital 239 Conn. 574 , 594 (1996) ("we approach with caution, and with deference to academic decisionmaking, the plaintiff's challenge to the motivation of the hospital in terminating his residency.") (citing cases)).

**Performance Evaluations**

Plaintiff has not proved that he was qualified to be promoted to a third year PGY3 resident. See McDonnell-Douglas Corp., 411 U.S. at 802 (under the second prong of plaintiff's prima facie case, plaintiff must show he is qualified for the position). He has offered no evidence to establish that he was qualified to be promoted except to dispute every less than laudatory comment made by his attendings.[1] His own witnesses and

---

[1] Plaintiff retains the burden of proving his ability to perform in the residency. Sreeram v. Louisiana State Univ. Medical Center-Shreveport, 188 F.3d 314, 319 (5th Cir. 1999) ("Since none of the evidence demonstrates Dr. Sreeram's ability to perform under the rigorous conditions of third year residency, she

exhibits explained why his deficiencies in the second year would

impede his ability to perform more independently, as third year

residents are required to do.[2]

---

failed to establish that she was qualified."); <u>Sayibu v.
Univerity of Texas Southwestern Medical Center at Dallas</u> Civil
Action No. 3:09-CV-1244-B, 2010 WL 4722039, at *3 (N.D. Tex.
Nov. 22, 2010) (Finding defendant "presents overwhelming
evidence that it based its decision to terminate Sayibu on his
deficiencies as a doctor and not on any underlying
discriminatory reason" and plaintiff "presents no evidence
raising an issue that [defendant's] reasons are pretextual other
than his own subjective view."); <u>Herron v. Virginia Commonwealth
University</u>, 366 F. Supp. 2d 355, 364 (E.D. Va. 2004) (requiring
that the plaintiff demonstrate that "she was qualified or
otherwise meeting legitimate expectations for continued
enrollment").

    [2] The record contains evaluations and e-mails from the
attending physicians throughout  his PGY2 in 2009-2010. [Pl. Ex.
6 (Dr. Beech); Pl. Ex. 7, Def. Ex. 517 (Dr. Chiles); Pl. Ex. 8,
58, Def. Ex. 506, 525 (Dr. Mellos); Pl. Ex. 9 (Dr. Shaw); Pl. Ex.
10 (Dr. Conroy); Pl. Ex. 11 (Dr. Kirwin); Pl. Ex. 12 (Dr. Drew);
Pl. Ex. 13 (Dr. Pilkey); Pl Ex. 21, 49, Def. Ex. 530 (Dr. Diaz);
Pl. Ex. 57 (Dr. Lewis); Pl. Ex. 59 (Dr. Tampi); Pl. Ex. 60, Def.
Ex. 513-16 (Dr. Tek); Pl. Ex. 61 (Dr. Okasha); Pl. Ex. 62 (Dr.
Shaw); Pl. Ex. 62 (Dr. Milstein); Def. Ex. 511, 524 (Dr.
Kravitz); Pl. Ex. 61, 512 (Dr. Okasha); Def. Ex. 521 (Dr.
Vojvoda); Def. Ex. 523 (Dr. Kerfoot); Def. Ex. 511, 524 (Dr.
Kravitz); <u>see also</u> Def. Ex. 503-5. This evidence included
concerns and complaints raised by multiple attending physicians
and supervisors based on core competency issues in the areas of
medical knowledge (patient evaluation and treatment planning);
interpersonal communication skills (patient interviewing skills,
patient care, English oral and written skills, accurate patient
records); patient care (medical knowledge, poor patient
interviewing skills, not seeming to understand patient care
directives, inaccurate documentation, poor clinical judgment);
professionalism (dismissive of nursing staff, discontinuation of
special supervision); and system of care (noting difficulties
dealing with the system of care). [Pl. Ex 6-12; 21; 54
("persisting pattern of poor performance"); 57-62 and Def. Ex.
503-506; 511-17; 521-22; 524-25; 527; 530]. There is no evidence
that plaintiff met with his attending physicians or the Residency

**Inference of Discrimination**

Plaintiff challenges all the evaluations as biased based on references to his language and comprehension skills, or cultural issues. There is uncontroverted evidence that his ability to communicate in English with patients and other treatment providers was an essential skill for a psychiatrist. Cultural references in context have to do with understanding/communication with patients; his ability to understand and communicate with patients was identified as problematic prior to the Residency Review Committee ("RRC") decision in May 2010.  Special supervisors continued to find problems during his probationary period including Drs. Tampi, Tek and Okasha-all born outside the United States and familiar with issues around language and cultural familiarity necessary to be a good psychiatrist in the United States. These references do not evidence bias on the part of the evaluators.

Nor has plaintiff shown that the decisions to require repetition of PGY2 on probation and to terminate his participation in the residence during plaintiff's probation were made under circumstances giving rise to an inference of discrimination. Here the decision making body was the RRC. There

Program Director at the time they submitted their evaluations to dispute these findings.

is no evidence of bias in the RRC's consideration of and decision
to require plaintiff to repeat his PGY2 year. The RRC met on May
7, 14, and 21, 2010. The evidence shows that they reviewed
summaries of all the attending PGY2 evaluations, without
involvement by Dr. Chiles.  There was no evidence that the RRC
had knowledge of the allegedly discriminatory comments or that
they relied on Dr. Chiles' evaluation, when the performance
issues raised by Dr. Chiles were reiterated and expanded on
subsequent evaluations. Indeed, the evidence shows that Dr.
Chiles, in December 2009, recommended remediation but not a
special status for plaintiff due to her concerns about his
sensitivity.  She recommended that plaintiff get all the help of
that status without the stigma associated with it.

The Court also finds no evidence of bias in the RRC's
decision to dismiss plaintiff from the residency program. The
physicians supervising him during the three months probation
unanimously found that Dr. Abdel-Raouf had continued performance
deficiencies as a PGY2 and was not ready for promotion to a PGY3.
[Def. Ex. 504, 505].

On this record, Yale has proffered voluminous evidence that
plaintiff was not qualified for the position of PGY3,
establishing sufficient evidence to support a legitimate, non-
discriminatory reason for the RRC's employment actions.

Plaintiff offered no countervailing evidence except his own opinion.

**Pretext**

Even assuming that plaintiff proved a prima facie case, he has no further helpful evidence on what motivated the RRC's decisions not to promote him to a PGY3, to place him on probation and to dismiss him from the program. The jury could not infer discrimination where the evaluations unanimously find plaintiff deficient and there is no evidence from which to infer bias by the decisionmakers.

Finally, plaintiff's claims under Section 1981 fail for the same reasons as the Title VII claims. <u>Choudary v. Polytechnic Inst.</u>, 735 F.2d 38, 44 (2d Cir. 1984) (Title VII analysis applies to Section 1981 claims).

### 2. Retaliation-Title VII and Section 1981

Plaintiff's retaliation claims under Title VII and Section 1981 also fail.[3] <u>Taitt v. Chemical Bank</u>, 849 F.2d 775, 777 (2d

---

[3] In order to establish a claim of retaliation under Title VII, plaintiff must provide

> evidence sufficient to permit a rational trier of fact to find (1) that [] he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists

Cir. 1988) ("The elements required to make out a claim of
retaliatory discharge under 42 U.S.C. §1981 are the same as those
required to make out such a claim under Title VII.").  There is
no evidence that, but for his "complaints," he would have been
promoted to PGY3 and not dismissed from the program.  His own
witnesses testified that plaintiff declined to make a complaint
or cooperate in any investigation.  Even assuming plaintiff could
show that he intended to pursue his rights, he has not shown that
the members of the RRC took any adverse action against him with a

---

between the protected activity and the adverse
action, i.e., that a retaliatory motive played a
part in the adverse employment action.

Kessler v Westchester County Dept. of Social Services,
461 F.3d 199, 205-06 (2d Cir. 2006) (quoting Cifra v.
General Electric Co., 252 F.3d 205, 216 (2d Cir.
2001)).

"To establish retaliation under Section 1981,
plaintiff must show that he was "(1) engaged in an
activity protected under anti-discrimination statutes,
(2) the defendants were aware of plaintiffs'
participation in the protected activity, (3) the
defendants took adverse action against plaintiffs based
upon their activity, and (4) a causal connection
existed between plaintiffs' protected activity and the
adverse action taken by defendants." Lizardo v.
Denny's Inc., 270 F.3d 94, 105 (2d Cir. 2001) (citing
Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039
(2d Cir. 1993)).

A retaliation claim under Title VII and Section 1981 follows
the familiar burden shifting framework developed to evaluate
allegations of disparate treatment. Jute v. Hamilton Sunstrand
Corp., 420 F.3d 166, 173 (2d Cir. 2005); see Hicks v. Baines,
593 F.3d 159, 166 (2d Cir. 2010) (citing Jute v. Hamilton
Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)).

desire to retaliate against him for having attempted to assert
his rights under Title VII or engage in "protected activity"
under Section 1981.  The decision maker, the RRC, was unaware of
the complaint or any situation that would give rise to a
complaint. Plaintiff did not offer any testimony from the RRC
members, or evidence that any of them acted with a discriminatory
motive. There is no evidence to support a conclusion that the
members of the RRC were motivated by anything other than the
plaintiff's failure to meet the standards of the Yale Psychiatric
Residency Program.  Plaintiff testified that every person that he
told about the discriminatory comments told him that Yale did not
tolerate discrimination and reporting it would not get him into
trouble. There is uncontradicted testimony from Dr. Rohrbaugh
that no one discussed the Ft. Hood comment at the RRC meetings,
that he did not vote on the committee, and that he did not
indicate his preference on the issue or attempt to influence
votes either explicitly or implicitly. Gordon v. New York City
Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) ("proof of
causation can be shown either: (1) indirectly, by showing that
the protected activity was followed closely by discriminatory
treatment, or through other circumstantial evidence such as
disparate treatment of fellow employees who engaged in similar
conduct; or (2) directly, through evidence of retaliatory animus
directed against the plaintiff by the defendant.") (citing

15

Cosgrove, 9 F.3d at 1039)); Henry v. Wyeth Pharma, Inc., 616
F.3d 134, 148 (2d Cir. 2010) ("a causal connection between the
protected activity and the adverse employment action—it is not
necessary that the supervisor who has knowledge of the
plaintiff's protected activities have *ordered* the agent to
impose the adverse action. A causal connection is sufficiently
demonstrated if the agent who decides to impose the adverse
action but is ignorant of the plaintiff's protected activity acts
pursuant to encouragement by a superior (who has knowledge) to
disfavor the plaintiff.").

Accordingly, plaintiff's retaliation claims under Title VII
and Section 1981 were insufficient to merit a jury verdict in his
favor.

**3. Hostile Work Environment and Intentional Infliction of Emotional Distress**

The Court also finds no evidence of a hostile work
environment, or extreme/outrageous conduct, even crediting
plaintiff's interpretation of the comments allegedly made by Dr.
Chiles.[4] Her alleged Ft. Hood comment, a single incident, was

_____

[4] Title VII affords employees the right to work in an
environment free from discrimination on the basis of race and/or
religion. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57,
65-66 (1986). To prevail on a hostile work environment claim, a
plaintiff must demonstrate: "(1) that [his] workplace was
permeated with discriminatory intimidation that was sufficiently
severe or pervasive to alter the conditions of [his] work
environment, and (2) that a specific basis exists for imputing

neither pervasive nor sufficiently severe to warrant liability on the basis of a single incident.

Nor has plaintiff supported his claim of intentional infliction of emotional distress. The Court heard no evidence of intent to inflict emotional distress.[5] See Appleton v. Board of

_____

the conduct that created the hostile environment to the employer." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997(quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1986)). The conduct alleged must be severe and pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." Harris v. Forklist Systems, Inc., 510, U.S. 17, 23 (1993).

> Whether the environment may be considered
> sufficiently hostile or abusive to support such a
> claim is to be measured by the totality of the
> circumstance, including the frequency and severity
> of the discriminatory conduct, whether such
> conduct is physically threatening or humiliating,
> and whether the conduct unreasonably interferes
> with the plaintiff's work performance.

Williams, Jr. v. The County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) (citing Harris, 510 U.S. at 23). "In order to meet his burden, plaintiff must show more than a few isolated incidents of racial [and or religious] enmity, there must be a steady barrage of opprobrious racial comments, evidence solely of sporadic racial slurs does not suffice." Id. (internal quotation marks and citations omitted). "[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."  Harris, 510 U.S. at 21 (internal quotation marks and citations omitted).

[5] To state a claim for intentional infliction of emotional distress, plaintiff must prove the following four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of

Educ. of Town of Stonington, 254 Conn. 205, 210 (2000) ("whether a defendant's conduct is sufficient to satisfy the requirements the it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury."). The record contains contrary evidence that Dr. Chiles and other supervisors tried to help plaintiff improve his performance without initially giving him special supervisory status. Plaintiff had no further contact with Dr. Chiles after December 2009 and there was no testimony regarding other action by her except for her end-of-rotation evaluation. Plaintiff made no complaints regarding discriminatory treatment by other attendings. However subjectively upset Dr. Abdel-Raouf became because he was being evaluated as deficient in some areas, the evaluations balanced positive comments with areas needing improvement and were not unduly harsh. As a matter of law, the Court finds there was insufficient evidence to send these claims to the jury.

**IV.   CONCLUSION**

In summary, applying the Rule 50(a) standard of review, which considers the evidence in a light most favorable to plaintiff and draws all reasonable inferences in his favor, no reasonable juror

---

the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000) (quoting Petyan v. Ellis, 200 Conn. 243, 253 (1986) (internal quotation marks omitted))).

could find from the evidence that the reasons given for the RRC's decisions to not promote plaintiff and then terminate his participation in the residency after he did not successfully complete his three month probation were a pretext for discrimination on the basis of race or religion.

Plaintiff's counsel asked that this matter be sent to the jury anyway.  While that would be an easy solution for the Court, it would, after an eight day trial, inconvenience the jurors by requiring them to hear two or three more days of evidence, none of it favorable to plaintiff, and then spend a day or more in argument, charge and deliberations.

Once the Court had determined that, based on the evidence, it could not allow a verdict in favor of plaintiff to stand, it was incumbent on the Court to say so. Because no reasonable juror could return a verdict for plaintiff on the facts presented by plaintiff, the defendant's motions were granted.

For the reasons stated here and on the record, defendant's Motions for Judgment as a Matter of Law on all Counts (1-5) **[Doc. ##126, 127]** are **GRANTED.** Judgment will enter for the defendants.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [doc. #66] on September 12, 2014, with appeal to the Court of Appeals.  Fed. R.

Civ. P. 73(b)-(c).

ENTERED at Bridgeport this 17th day of February 2015.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE